**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Attorney's Office for the Western District of New York and on behalf of the United States Small Business Administration ("SBA") (collectively the "United States"), Muslim Public Affairs Council ("MPAC") and Muslim Public Affairs Council Foundation ("MPACF") (collectively the "Defendants"), and Relator TZAC, Inc. (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.  MPAC is a tax-exempt public charity organized under Internal Revenue Code ("IRC") Section 501(c)(4), headquartered in Los Angeles, California. MPAC has a chapter located in Buffalo, New York, known as MPAC-WNY.

B.  MPACF is a related, tax-exempt organization under IRC Section 501(c)(3), headquartered in Los Angeles, California.

C.  The Paycheck Protection Program ("PPP") was established under the Coronavirus Aid, Relief, and Economic Security Act, to aid eligible small businesses suffering economically because of the COVID-19 pandemic.

D.  To obtain a PPP loan, an eligible business was required to submit a PPP loan application. The loan application required the business—through its authorized representative—to acknowledge the program rules and make certain affirmative certifications regarding its eligibility to obtain the PPP loan.

E.  PPP loan applications were processed by participating lenders, which received a processing fee from SBA. If a loan application was approved, the

participating lender funded the loan, which was guaranteed by the SBA up to the full amount of the loan.

F.  In April 2020, MPACF obtained from a participating lender a First Draw PPP loan with a principal loan amount of $166,080 ("First Draw Loan").

G.  In August 2021, MPACF obtained from the SBA full loan forgiveness for the First Draw Loan, thereby causing the SBA to reimburse the lender $168,182.

H.  On June 2, 2023, TZAC, Inc. filed a *qui tam* action in the United States District Court for the Western District of New York captioned *United States ex rel. TZAC, Inc., v. Muslim Public Affairs Council and Muslim Public Affairs Council Foundation*, 23-cv-483-JLS, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleged that MPACF applied for and received federal first- and second-round PPP funding by fraudulently certifying that it had employees and payroll expenses when in fact it had no employees or payroll expenses, and only MPAC had employees and payroll expenses. The United States partially intervened in the Civil Action on June 6, 2025, for purposes of settlement.

I.  The United States contends that it has certain civil claims against Defendants arising from MPACF's application for, receipt of, and eventual forgiveness of the First Draw Loan. Specifically, the United States contends that MPACF was ineligible for the First Draw Loan and loan forgiveness because MPACF was a 501(c)(3) non-profit that did not have any employees at the time of its First Draw Application, as required to be eligible for the PPP loan. The individuals who MPACF disclosed as employees on its PPP application were in fact employed by MPAC, a

related 501(c)(4) non-profit. As a 501(c)(4), MPAC was not eligible to obtain a PPP loan. That conduct is referred to as the Covered Conduct.

    J.    Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement.

    K.    This Settlement Agreement is neither an admission of liability by MPAC or MPACF nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

    1.    Defendants shall pay to the United States **$185,000** (Settlement Amount), of which $168,182 is restitution, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of New York no later than seven (7) days after the Effective Date of this Agreement.

    2.    Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $18,500 to Relator by electronic funds transfer (Relator's Share).

    3.    Defendants shall institute procedures to ensure that employees accurately and contemporaneously record time spent on MPAC activities and that MPAC activities are funded exclusively by MPAC. Such procedures shall be provided

to the United States Attorney's Office for the Western District of New York no later than thirty (30) days after the Effective Date of this Agreement.

4. Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases Defendants, together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 6 below, and the United States' receipt of the Settlement Amount and the Relator's receipt from the United States of the Relator's Share, Relator, for himself/herself and for his/her heirs, successors, attorneys, agents, and assigns, releases Defendants, together with their officers, directors, agents and employees; current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6. Notwithstanding the releases given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a.    Any liability arising under the IRC;

    b.    Any criminal liability;

    c.    Except as explicitly stated in the Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

    d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.    Any liability based upon obligations created by this Agreement;

    f.    Any liability of individuals;

    g.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    h.    Any liability for failure to deliver goods or services due;

    i.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

7.    Relator and its successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and its successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any

claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8. Relator, for itself and its successors, attorneys, agents, and assigns, releases Defendants, and their officers, directors, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

9. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

11. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendants, and their present or former officers, directors, employees, shareholders, and agents in connection with:

    (1) the matters covered by this Agreement;

6

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement;

(5) the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants or any of their subsidiaries or affiliates from the United States. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment

7

plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

13. Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

14. This Agreement is intended to be for the benefit of the Parties only.

15. Upon receipt of the payment described in Paragraph 1, above, the Relator and the United States shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1). The Joint

Stipulation of Dismissal shall be with prejudice to all claims that relate to the Covered Conduct and to all claims asserted in the Civil Action.

16. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

18. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of New York. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

23.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 6/6/25    BY: *James Bobseine*
James E.B. Bobseine
Assistant United States Attorney
Western District of New York

*Counsel for the United States*

## RELATOR

DATED: _____    BY: _____
David Abrams, Attorney at Law

*Counsel for Relator* TZAC, Inc.

## DEFENDANTS

DATED: 6/6/25    BY: *Salam al Marayati*
Salam Al-Marayati
President, Muslim Public Affairs Council

DATED: 6/6/25    BY: *Salam al Marayati*
Salam Al-Marayati
President, Muslim Public Affairs Council Foundation

DATED: 6/6/2025    BY: _____
Paul B. Salvaty
COHEN WILLIAMS LLP

David C. Scheper
WINSTON & STRAWN LLP

*Counsel for Defendants*

**THE UNITED STATES OF AMERICA**

DATED: _____     BY: _____
James E.B. Bobseine
Assistant United States Attorney
Western District of New York

*Counsel for the United States*

**RELATOR**

DATED: _____     BY: _____
David Abrams, Attorney at Law

*Counsel for Relator* TZAC, Inc.

**DEFENDANTS**

DATED: _____     BY: _____
Salam Al-Marayati
President, Muslim Public Affairs Council

DATED: _____     BY: _____
Salam Al-Marayati
President, Muslim Public Affairs Council Foundation

DATED: _____     BY: _____
Paul B. Salvaty
COHEN WILLIAMS LLP

David C. Scheper
WINSTON & STRAWN LLP

*Counsel for Defendants*